UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE NAUTILUS GROUP, INC.,

    Plaintiff,

v.

ICON HEALTH & FITNESS, INC.,

    Defendant.

CASE NO. C02-2420RSM

MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendant's Motion for Partial Summary that the Crossbow/Crossbar Product Does Not Infringe Claims 1 or 12 of the '704 Patent, Claim 1 of the '057 Patent, or Any Asserted Claims Depending Therefrom. (Dkt. #425). Defendant argues that the CrossBar product does not infringe claims 1 or 12 of the '704 patent, or claim 1 of the '057 patent, either literally or under the doctrine of equivalents, because the rods of the CrossBar do not have a free end and a fixed end, they are oriented horizontally, not vertically, and finding otherwise would vitiate specific terms found in the claims. Accordingly, defendant argues that it is entitled to summary judgment as a matter of law.

Plaintiff responds that defendant's motion should be denied for several reasons. First, plaintiff argues that the CrossBar literally infringes on the patents and claims at issue because its

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
PAGE - 1

rods meet the element of an end secured in a fixed position, and an end that is free. (Dkt. #455). Plaintiff further argues that those elements are not vitiated under the theory of equivalents. Plaintiff also argues that the CrossBar meets the vertically up claim limitation in claim 12 of the '704 patent. Finally, plaintiff argues that, should the Court disagree with plaintiff's arguments, summary judgment is still improper because genuine issues of material fact exist as to whether these elements are met.

For the reasons set forth below, the Court disagrees with plaintiff and GRANTS defendant's motion for summary judgment.

## II.  DISCUSSION

### A.  Background

The instant lawsuit has been pending in this Court since December of 2002. The claims involve alleged infringement of the patents for the BowFlex™ exercise machine. The BowFlex machine employs cables attached to one end of a flexible rod or rods as a resistence mechanism, self-contained in a compact home exercise machine. The rods are mounted vertically, with one end fixed to a base, and the other end either free or attached to a cable. In 1984, the inventor applied for a patent on the machine, and the United States Patent and Trademark Office ("PTO") subsequently issued two patents, U.S. Patent No. 4,620,704 and U.S. Patent No. 4,725,057. These patents will be referred to as the '704 and '057 patents. Between 1986 and 2002, sales from the BowFlex machine generated revenues of nearly one billion dollars.

In October of 2002, defendant introduced the CrossBow™ (now CrossBar™) exercise machine. The machine uses a similar cable and flexible rod system of resistence. However, unlike the BowFlex, the CrossBar has rods which are mounted horizontally on the middle of the machine's main structure, with cables attaching at both ends of the rod or rods. As of this date, profits from the sale of CrossBar machines exceed $84 million.

On December 3, 2002, plaintiff filed the instant action alleging patent infringement by

defendant. Plaintiff then filed a motion for preliminary injunction to stop the sale of the CrossBar machine. Judge Pechman, the judge to whom this case was formerly assigned, addressed the motion, along with cross-motions for summary judgment filed by plaintiff and defendant. The motions focused primarily on a term contained in the '057 patent, "mounted on the base in cantilevered fashion." In ruling on the motions, Judge Pechman construed the term, and adopted defendant's proposed narrow construction. On that basis, Judge Pechman granted summary judgment of no infringement to defendant, and denied plaintiff's motion for a preliminary injunction. Plaintiff immediately appealed Judge Pechman's decisions to the Federal Circuit Court of Appeals.

On November 18, 2003, the Federal Circuit issued its decision, reversing Judge Pechman's rulings, and offering its opinion on the term "in cantilevered fashion with one end of each of the rods being free." (Dkt. #243, Ex. 1). The Federal Circuit concluded that this Court had erred in construing the term, and remanded the case. Defendant then filed petitions for rehearing and rehearing *en banc*, both of which were denied by the Federal Circuit. After the Federal Circuit Court of Appeals issued its mandate, Judge Pechman vacated her prior orders. The case was subsequently transferred to the undersigned District Judge.

The parties then asked this Court to construe several claim terms contained in both the '057 and the '704 patents. The terms essentially fell into two groups. The first group of claim terms related to the way the flexible rods are mounted on the machine. The second group of claim terms related to how the cable is connected to the rods and other structures, and how that cable is routed through the machine to allow the user to exercise. The Court construed those terms, and issued its Order regarding claim construction on February 16, 2005. (Dkt. #395). Defendant subsequently filed several motions for partial summary judgment, including the instant motion.

  **B. Summary Judgment Standard**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
PAGE - 3

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

**C. Applicable Law for Infringement**

As this Court has noted before, determining patent infringement is a two-stage process. First the Court must construe the claims at issue. Claim construction is a pure question of law for the Court, even if the case is designated to go to a jury trial. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). After the claims have been properly construed, the fact-finder will compare the claims to the allegedly infringing product or process. The comparison is conducted on an element-by-element basis.

There are two basic principle of infringement: literal infringement or infringement under

the doctrine of equivalents. To constitute literal infringement, every element of a given claim must be present in, or "read on," the accused product. *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). The doctrine of equivalents holds that, for every claim element not literally present, the accused product must contain an equivalent element. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997). Equivalence may be found where the relevant part of the accused product performs the same function in the same way to achieve the same result as the corresponding element in the patent claim. Alternatively, equivalence may also be found where the differences between the relevant part of the accused product and the corresponding element in the patent claim are insubstantial. However, if even one limitation of a claim is not met by an accused device, either literally or by equivalents, there is no infringement as a matter of law. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

In a typical patent case, whether an accused device satisfies the requirements of a claim is a question of fact. *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). However, when there is no genuine issue as to the structure or composition of the accused device, the question of infringement becomes a question of law for the Court to decide. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). Defendant asserts that this is such a case, and the Court agrees.

**D. Arguments Regarding Literal and Equivalent Infringement**

Defendant argues that this Court's Order on claim construction compels a conclusion of noninfringement of the CrossBar, primarily because the machine has resilient rods that do not have one end in a fixed position, as required by the '057 patent. Defendant also asserts that the CrossBar machine does not infringe the '704 patent because it does not have rods that extend vertically up.

Plaintiff concedes that the CrossBar machine does not literally infringe the term

1   "vertically up" in claim 12 of the '704 patent.  Instead, plaintiff sets forth an infringement

2   argument under the doctrine of equivalents.  However, plaintiff does assert that the CrossBar

3   literally infringes claim 1 of the '704 patent and claim 1 of the '057 patent.  In response,

4   defendant argues that plaintiff is now precluded from making a literal infringement argument

5   because it did not previously raise such an argument in its pretrial briefing or before the Federal

6   Circuit Court of Appeals.

7       Accordingly, this Court will first address the parties' literal infringement arguments, and

8   then address the equivalence arguments.

9       1.  Literal Infringement

10       Plaintiff argues that the CrossBar machine meets the elements of an end "secured in a

11   fixed position," and having one "free" end, and therefore, the machine literally infringes upon the

12   patents at issue.  (Dkt. #455 at 6-10).  Defendant responds that plaintiff may no longer raise a

13   literal infringement argument because it failed to do so in a timely manner.  (Dkt. #459 at 3-5).

14   The Court agrees with defendant.

15       On August 29, 2003, plaintiff's expert witness issued a report stating that the CrossBar

16   rods do not have one fixed end, but rather, they have two free ends.  (Dkt. #460, Ex. A).

17   Plaintiff took the same position when it appealed Judge Pechman's orders to the Federal Circuit

18   Court of Appeals.  In its briefing, plaintiff explained that the CrossBar rods have free ends on

19   both sides.  (Dkt. #460, Ex. B at 6).  The Federal Circuit Court of Appeals agreed with that

20   assertion, noting that "[t]he CrossBow mounts the rods . . . with two free ends."  (Dkt. #460,

21   Ex. C at 2).

22       In its prehearing statement, filed prior to this Court's *Markman* hearing, plaintiff

23   presented its infringement arguments.  Consistent with its previous position, plaintiff asserted

24   only equivalency arguments for the limitation that one end of the rods be "secured in a fixed

25   position," but did not assert any literal infringement arguments.  Judge Pechman had previously

26

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
PAGE - 6

warned the parties that once their prehearing statements were filed, the Court would not consider new allegations of infringement without the asserting party showing good cause.

While plaintiff now argues that it raised its literal infringement arguments in its expert's supplemental report on March 9, 2005, because it was the first opportunity to address the Court's claim construction order, the Court finds that argument disingenuous. (*See* Dkt. #455 at 11 n.6). The Court's claim construction order adopted plaintiff's interpretations of the terms "end," "free," and "secured in a fixed position." (Dkt. #395 at 7-12). Thus, plaintiff had every opportunity to raise literal infringement arguments in its prehearing statement, had it truly believed that the CrossBar literally infringed those limitations. Plaintiff chose not to do so. Accordingly, the Court agrees with defendant that plaintiff is now barred from raising literal infringement arguments on summary judgment.

Furthermore, plaintiff concedes that the CrossBar does not literally meet the limitation of claim 12 of the '704 patent, requiring the rods to be mounted "vertically up." (Dkt. #455 at 3). Therefore, the Court will address only the parties arguments regarding infringement under the doctrine of equivalents, as set forth below.

2. Equivalency

Defendant asserts that the CrossBar does not infringe claim 1 and claim 12 of the '704 patent or claim 1 of the '057 patent under the doctrine of equivalents because of the U.S. Supreme Court's pronouncements on the doctrine of vitiation. (Dkt. #425 at 8-14). Specifically, defendant notes that under the doctrine of vitiation, the doctrine of equivalents cannot be used to argue infringement if application of the doctrine of equivalents would effectively read a claim limitation out of a claim or render it meaningless.

Claim 1of the '704 patent and claim 1 of the '057 patent requires "a resilient rod mounted on the base in cantilevered fashion with *one end of the rod being secured in a fixed position and the other end being free*." (Dkt. #426, Ex. D, col. 7 at lns. 5-7 and Ex. E, col. 7 at

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
PAGE - 7

1  lns. 31-33) (emphasis added).  Defendant asserts that any attempt to use the doctrine of
2  equivalents to read these claims on the CrossBar would render the terms "fixed position" and
3  "free" meaningless, effectively reading them out of the claim altogether.  (Dkt. #425 at 8-13).

4  Plaintiff responds that the limitations of the claims are met under the doctrine of
5  equivalents because the CrossBar machine performs substantially the same function, in
6  substantially the same way, to achieve substantially the same result.  *See, e.g., Unidynamics*
7  *Corp. v. Automatic Prod. Int'l, Ltd.*, 157 F.3d 1311, 1322 (Fed. Cir. 1998).  Specifically,
8  plaintiff argues that the rods of the CrossBar are fixed so that when force is applied to a rod, it
9  bends in bow-like fashion, the fixed portion of the rod is restrained in the same way as described
10 in the patents, and the result of restraining the CrossBar rods is that a restricted rod cannot
11 move away from the force applied through the cable, and the rod must bend in bow-like fashion.
12 (Dkt. #455 at 11-12).

13 Vitiation is a question of law for the Court.  If the Court finds that a theory of
14 equivalents would vitiate a claim limitation, that completely precludes an assertion of
15 infringement under the doctrine of equivalents, regardless of arguments that two functions are
16 equivalent as a factual matter.  *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998)
17 (explaining that "[i]f a theory of equivalence would vitiate a claim limitation, . . . then there can
18 be no infringement under the doctrine of equivalents as a matter of law.").

19 In the instant case, the Court agrees with defendant that the two ends of the CrossBar
20 rods are structurally and functionally identical – that is, they are either both fixed or both free –
21 whereas the patent claims requires a rod that has one end in a fixed position and one end being
22 free.  Consequently, plaintiff's equivalency argument effectively eliminates any distinction
23 between the two ends of the rods.

24 Although plaintiff attempts to demonstrate through expert testimony that the "fixed end"
25 of the CrossBar rods include the middle portion that is fixed to the machine, and the remaining
26

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
PAGE - 8

portion of the rod is considered the "free end' of the rod, the doctrine of vitiation applies regardless of that testimony. *Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142, 1150-51 (Fed. Cir. 2004) (holding that the patentee's theory of equivalence would vitiate the "connecting" limitation, despite the patentee's use of the function-way-result test to demonstrate "equivalence"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1105-06 (Fed. Cir. 2000) (holding that the patentee's theory of equivalence would vitiate the "majority" limitation, despite the patentee's use of the function-way-result test to demonstrate "equivalence"); *Tronzo*, *supra* (explaining that "[w]hether an element of the accused device is equivalent to a claim limitation depends on 'whether the substitute element matches the function, way, and result of the claimed element. . . .' If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law.") (citation omitted).

        Plaintiff's expert testimony does not change the fact that this Court has required, through its construction of the terms, that one "end" – that is the portion of the rod including one of the rod's two extremities – must be fixed such that it, the end, remains in place during the ordinary use of the machine. (Dkt. #395 at 13). This language does not support plaintiff's argument that only some portion of the rod's length must be fixed. Likewise, plaintiff's arguments do not change the fact that the claims require that the end of the rods be structurally and functionally distinct. If the Court were to accept plaintiff's arguments, it would read out the limitations of the claims completely. Under plaintiff's interpretation, if any portion of the rod anywhere remains in place, then there is a free end and a fixed end, and the limitations would be met. This interpretation effectively nullifies the term "end" in the claims. Accordingly, the Court agrees with defendant that under the doctrine of vitiation, plaintiff may not assert an equivalency argument with regard to the claim 1 limitations in the '057 and '704 patents.

        Similarly, the Court agrees with defendant that vitiation prevents an equivalency

argument with regard to claim 12 of the '704 patent. In order to prevail on a claim of infringement under the doctrine of equivalents, plaintiff would have to prove that the requirement in the claim that an end of the rod extend "vertically up" is equivalent to a rod that extends horizontally. If the Court so held, then that would mean "vertically up" covers every possible orientation of a rod, and the term would become meaningless.

Plaintiff again argues that the CrossBar rods meet the "vertically up" limitation because they perform substantially the same function, in substantially the same way, to achieve substantially the same result. (Dkt. #455 at 15-17). However, as discussed above, the doctrine of vitiation applies because reading such a broad definition of "vertically up" to include horizontal rods would vitiate the limitation. Under plaintiff's interpretation, any orientation of any rod can result in infringement. Thus, the limitation for the rods to be mounted in an orientation that is generally upright, would no longer be required, and the limitation is effectively eliminated. Thus, the Court finds that under the doctrine of vitiation, plaintiff may not assert an equivalency argument with regard to the claim 12 limitation in the '704 patent.

### E. Genuine Issues of Material Fact

Finally, plaintiff asserts that even if defendant's positions are correct, summary judgment is not appropriate because there are genuine issues of material fact as to whether the portion of the CrossBar's rod that extends across the rod's midpoint is an "end" as construed by this Court, whether the portion of the CrossBar's rod that extends across the rod's midpoint can be "secured in a fixed position" when the mounting area includes and extends around the rod's midpoint, and whether the horizontally-oriented rods in the CrossBar can be deemed to satisfy the "vertically up" claim language found in claim 12 of the '704 patent. (Dkt. #455 at 21-22). The Court disagrees with plaintiff. As discussed above, even where plaintiff demonstrates through expert testimony that a claimed device performs substantially the same function, and achieves substantially the same result as the structure in question, the doctrine of vitiation

applies regardless of that testimony.  Accordingly, summary judgment is appropriate as set forth above.

### F. Remaining Issues for Trial

In it's prior motion for an expedited hearing on the instant motion, defendant explained that a decision in its favor on summary judgment would effectively negate the need for a trial in this case.  Plaintiff did not inform the Court whether it agreed with that assessment.

There are currently four additional pending motions and cross-motions for summary judgment, as well as numerous pending motions in limine, and trial is set for June 20, 2005.  In light of the instant Order, the parties <u>shall submit a joint status report no later than ten (10) days from the date of this Order informing the Court of any issues that remain pending for trial, or whether the remaining motions may be stricken and the trial date removed from the Court's calendar</u>.

### III.  CONCLUSION

Defendant's Motion for Partial Summary Judgment (Dkt. #425) is GRANTED, and the Court finds that the CrossBar does not infringe on claims 1 or 12 of the '704 patent, claim 1 of the '057 patent, or any claims depending therefrom, as a matter of law.

The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this _25__ day of May, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE